UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FREDRICK GROSSMITH,

*Plaintiff*

v.

CIVIL ACTION NO.: 07CV12324

RICHARD NOONAN et al.

*Defendant*

## MEMORANDUM IN SUPPORT OF FREDERICK GROSSMITH'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT PURSUANT TO FED.R.CIV.P. 50(B)

### I. Introduction

Plaintiff Frederick Grossmith hereby moves for a judgment notwithstanding the verdict pursuant to Fed.R.Civ.P. 50(b) since the evidence adduced at trial, taken in the light most favorable to the Plaintiff, so strongly and overwhelmingly was in favor of Plaintiff that no reasonable jury could have returned a verdict for Defendants unless the jury failed to heed the multiple instructions to the jury that this case is not about the dog, Kato, but rather about violations of Plaintiff's civil rights by use of excessive force, false arrest, malicious prosecution and assault and battery.

### II. Background

A reiteration of testimony of the witnesses, especially the Plaintiff and Defendants, will only result in a he said she said recital of conflicting facts. The Plaintiff, therefore, will argue only from proven or agreed upon facts and applicable law.

### III. Applicable Law ALMGLA ch. 140, §156

#### A. Elements of ALMGLA ch. 140, §156

The referenced law is attached as Exhibit 1. As relevant to this case this law can be broken down into the following elements:

1. Any person may kill a dog that
    a. Suddenly assaulted a person,
    b. While the person is peaceably standing or walking....
    c. Outside of the enclosure of the owner or keeper.
2. Any person may kill a dog found outside of the enclosure of its owner or keeper and not under his immediate care where the dog is in the act of worrying or wounding persons or livestock.
3. If any person shall kill or attempt to kill a dog so found, and in the act of worrying or wounding...persons or livestock...he shall not be held liable for cruelty to the dog unless:
    a. It shall be shown that he intended to be cruel to the dog; or
    b. That he acted with wanton and reckless disregard for the suffering of the dog;
4. Prompt killing or wounding of the dog, or a prompt report to...a dog officer of such a wounding shall be considered sufficient evidence to prove sufficient regard for the suffering of the dog.

### B. Plaintiff's Actions with Regard to the Law

The Plaintiff was in total, undisputed compliance with each and every relevant element of the above law.

1a. The dog suddenly bit the Plaintiff while the Plaintiff attempted to discover the name of the dog's owner by looking at the dog's tags. The Plaintiff was treated by EMTs at the scene for his wounds and later at the hospital.

1b. Prior to the attack the Plaintiff was peaceably going about his business on the his own property, repairing a house. (Undisputed).

1c. The dog was clearly outside of his owner or keeper's property and the control of the owner or keeper. (Undisputed). This is a most compelling fact because the town has a leash law and the dog's owner or keeper was in open violation of that law, solely through his own fault. If the dog were on its own property or within the control of its owner or keeper there would never have been an incident. Thus, the owner or keeper is the predominant cause of the incident, a fact known by the Defendants yet totally ignored when assessing whether or not to arrest the Plaintiff!

2. The dog was clearly out of its enclosure and went beyond just worrying the Plaintiff and his livestock, as the statue required. In fact, the dog wounded the Plaintiff. Even if the dog had not wounded the Plaintiff, it is undisputed that the Plaintiff was worried for himself and his livestock, especially considering the sensitive nature of the of the Plaintiff's activity that day, caring for the birthing sheep. As a result, the Plaintiff again was acting properly and had every right to kill the dog.

In their investigation the Defendants totally ignored the fact that a loose dog outside of its enclosure was wandering around in the immediate vicinity of birthing lambs. The Defendants' claim they never knew of the presence of livestock, lambs or otherwise, or heard the bleating of the lambs despite the gunshot and confusion of the numerous people wandering about. This is also one of the multitudinal red herrings

tossed about by the Defendants: that the property in question was not a farm which, according to the Defendants and their counsel, seems to make the statute inapplicable. However, nowhere in the statute is it stated or implied that the property on which the dog is found must be a farm in order to kill a dog. The other inference that may reasonably be made from the Defendants' claim that they did not know it was a farm is that they did not know that there were sheep within only a few feet of the deceased dog. This begs the question, what if any investigating did the Defendants conduct?

3. The statute is clear that under the facts agreed to or established at the trial no crime of cruelty to the dog was committed by the Plaintiff. In order to prove that the Plaintiff was cruel to the dog, one of two facts must be proved. First, the Plaintiff intended to be cruel to the dog. There is not a scintilla of evidence that the Plaintiff acted with such intent. The other fact would have to be that the acts of the Plaintiff were wanton or reckless as to the suffering of the dog. Again, there is not a scintilla of evidence that the Plaintiff was in any way wanton or reckless as to the suffering of the dog.

4. The Statute states that the prompt killing of a dog or prompt report of such a killing "shall be evidence of due regard for the suffering of the dog." The dog died instantly by a shot to the head and the Plaintiff called both the dog officer and the police. These facts are undisputed. Again, the Plaintiff is in compliance with the law.

### C. Transcripts

Unlike the facts as laid out above, the transcripts of the trial reveal an entirely different presentation of the law by the Defendants and their counsel.

Mr. Kesten:   "If you're being attacked by a dog you have the right to defend yourself."[Opening, 3:15-17]

4

No where does the law say that you can kill a dog only while being attacked as, "self defense" implies. (Exhibit A). The law furthermore does not say you can only kill a dog to defend yourself. What the Defendants are applying is the law of self defense as it pertains to humans. The fact is one does not have to be attacked or wounded in order to kill a dog. According to the statute, "worrying" is sufficient.

> Mr. Kesten:    "You cannot shoot a dog. It's against the law. Except under certain circumstances. If the dog is in the act of, it's called worrying your livestock, then you can. In the act."[Opening, 6:4-6]

Again the jury is told that you can kill a dog only while it is in the act of worrying your livestock. To punctuate this point the Defendants' counsel repeats "in the act." Wrong again. <u>Supra</u>. The statute starts by stating "Any person may kill a dog which suddenly assaults him while he is peaceably standing, walking or riding outside the enclosure of its owner or keeper..." There is much made of the term "in the act of" but "in the act of" is not a condition if there is an assault by the dog. "In the act of", which follows in the statute, implies that you must be ready to kill the dog while being attacked. This is simple nonsense. The statute does not say "*while* in the act of..." In addition the dog did not leave after wounding the Plaintiff. It remained and was unquestionably in the act of worrying the plaintiff and his birthing sheep which heard all the commotion of the aggressiveness of the dog. The Plaintiff did not follow a retreating dog, the dog remained on the property in close proximity to the lambs and

Plaintiff as if he belonged there. Furthermore, the only act that justifies the killing of a dog is called :worrying your livestock." Wrong again. <u>Supra</u>.

The Defendants' counsel again refers to the relevant statue as one of self defense which it is not.

> Mr. Kesten:   "This was not going to be self defense." [Opening, 9:2-3]

As stated earlier, self defense is irrelevant to the case at issue as the statute on point does not relate to or even mention self defense. Mr. Kesten's numerous mentions of self defense served only to confuse the jury, not to assist them in making an informed decision for the outcome of the case.

The Defense counsel's opening confirms what the Plaintiff testified to. That testimony showed total compliance by the Plaintiff with the statute. Counsel, referring the Plaintiff's telephone call to the police, stated:

> Mr. Kesten:   "The dog bit me and I shot him." [Opening, 10: 2-3]

The act of killing a dog under these circumstances is in complete compliance with the statute. This means that the police knew by virtue of the Plaintiff's call to them (a call which was also in compliance with the statute) that the Plaintiff said he killed the dog because the dog bit him. Furthermore the Defendants' counsel admits that the Plaintiff told arresting Officer Gallagher that the dog bit him.

6

> Mr Kesten: "Mr. Grossmith tells him, yeah he bit me. What did you do then? I went to my truck, I assembled my rifle, put a bullet in, put the bolt in, and I shot him." [Opening, 10:7-10]

The Plaintiff knew the law and knew that he had complied with the law. Thus his reaction upon being arrested:

> Mr. Kesten: "He was the most amazed guy in the world when he was arrested." [Opening, 11:5-6]

Why wouldn't he be, he knew the law and he knew he complied with it. He was amazed, and rightfully so, that the police officers did not know the law.

Again counsel for the Defendants' not only misinterprets the law but goes further:

> Mr. Kesten: "The guy says he was bitten, then the dog was walking around and he shot him. Is that what – do you think - do you agree with me? I think it's a crime." [Opening, 11: 9-12]

The Plaintiff was found not guilty of any crime. Counsel does not make any argument that the Defendants showed probable cause to arrest the Plaintiff and cannot in good faith argue that a crime took place. Yet counsel for the Defendants states that it is his opinion that this was a crime. This was an improper and inaccurate comment that again served only to confuse the jury, not to assist them in making the most informed decision possible.

Again counsel for the Defendants state

> Mr. Kesten:   "That dog was going to die. So whatever it is happens, and as the law says, if the dog is in the act, in the act of wounding you can shoot him." [Closing. 9:4-6]

This is yet another instance of the Defendants' counsel misquoting the law. Mr. Kesten says you can kill a dog if the dog is in the act of attacking. This is simply not true. But this is even more outrageous counsel for the Defendants' goes beyond misstating the law, to applying law that does not exist.

> Mr. Keston:   "So what did officer Gallagher know? What he told them what happened. The dog bit me. I went to the truck, I loaded my gun, I took aim, and I can killed him. End of story. He's guilty of a felony. There's certainly probable cause. That's a felony. Not even probable cause. That is a – he's described a felony. He has told them I committed a felony." [Closing 9:24-25, 10:1-5]

As noted earlier, the Plaintiff did not commit any crime, let alone a felony. The following are further examples of such grossly inaccurate and confusing misstatements:

> Mr Keston:   "Imagine that scene. What if Dale Wigmore and he were there with guns and the two dogs were fighting. It's not legal for each of them to take aim at the other one's dog and kill them." [Closing. 10:12-15]

> Mr. Keston:   "And certainly once, once he bit him he could just kill him." [Closing. 15:17-18]

> Mr. Kesten:   "He commits a felony." [Closing. 16: 14]

> Mr. Keston:   "He was arrested because of what he said. And he could have said this is why I suggest to you, and this is basically an honest man. He believed this was legal. It's not. He told them that. If he was a dishonest man he could have said the dog was coming at me, he bit me and I had to shoot him. No arrest.

8

Nothing happens. He told them the truth. He told the truth on tape. Unfortunately for Mr. Grossmith, in 2006, in suburban Boston, it's a felony to do what he did. Perhaps in Texas, in the prairie it's not. But here it is. It's no longer the prairie. You can't do it. And he did it." [Closing, 20: 1-12]

## II. Probable Cause

### A. Applicable Law

Simply put: was it more probable than not to the Defendants that a crime had been committed so that a legal arrest was made? The answer to this is absolutely not.

Probable cause in this case was developed by Officer Gallagher and discussed with Sergeant Noonan.

The first notice to the police of the incident was a telephone call from the Plaintiff to the police in which the Plaintiff said "the dog bit me and I shot him" (Mr. Kesten, opening 10:2-3). This call was then passed on to Officer Gallagher. As a result of Officer Gallagher's phone conversation with the Plaintiff Officer Gallagher knew upon his arrival at the scene that a dog allegedly bit a person and as a result was shot (Officer Gallagher 12:22-25). At this point there was nothing to justify the conclusion that a crime has been committed. When Officer Gallagher arrived at the scene he knew that it was the property of the Plaintiff and that the dog was owned by another individual. He knew, therefore, that the dog is not on the property of its owner nor in the care of another person. He also knew of town's leash law. At the scene, Officer Gallagher also observed blood on the Plaintiff's hand (Officer Gallagher 12:8). He knew of the injury and the EMTs were at the scene and administer care to the Plaintiff (Officer Gallagher 15:4). The Plaintiff said to Officer Gallagher, "that when he reached for the collar the dog bit him several times on the right hand and right forearm" (13:22-25).

9

Officer Gallagher said he then made up his mind that a crime had been committed and that the Plaintiff was under arrest (Officer Gallagher 15:9-14).

The Plaintiff was not taunting or harassing the dog, but simply looking to see the name of the owner when the dog suddenly attacked; the same thing witness Janet Spinny did a month prior when the same dog was harassing the Plaintiff's livestock for at least twenty (20) minutes, causing the death of a cow by miscarriage.

The truth of the matter is Officer Gallagher did not know if a crime had been committed and admits as much (Officer Gallagher 24:5-9 and 24:10-1). Also, Officer Gallagher did not make the decision alone; he made the decision in conjuncture with Sergeant Noonan. (Officer Gallagher 25:16-20).

> Counsel: "And what does it say?"
>
> Officer Gallagher: "I said I don't remember that. To be honest with you – well, I think we, I'll be honest, I don't know if I came up with it or if he came up with it."
>
> Counsel: "Who's he?"
>
> Officer Gallagher: "Referring to Sergeant Noonan." [Officer Gallagher 25:3-8]

So now Officer Gallagher does not know who came up with the charge of cruelty to animals. Officer Gallagher did not even know, at the time of the arrest, under what circumstances one can kill a dog (Officer Gallagher 26: 22-25 and 27: 1-4). As stated before herein the statute does not mention that it has to be a farm in order to kill a dog. The word "farm" is not even mentioned in the statute.

The Defendants did not know what crime had been committed much less the elements of the crime the Plaintiff was arrested for. The situation was such that there were not any exigent circumstances in progress. When the police arrived the dog was dead and the Plaintiff was waiting for them. The Plaintiff was to totally cooperative and, being a resident of the town since birth, was not flight risk. There were no split second decisions to be made. The Plaintiff surrendered his gun, ammunition and gun license. Despite all this, the Defendants did no investigation, had no idea what if any crime had been committed and unlawfully arrested the Plaintiff. The Defendants could have done an investigation at the scene and checked the law then returned and arrested the Plaintiff but instead they had to engage in the "Starsky and Hutch"– drama causing great harm to the Plaintiff in the community as well as emotionally and physically. Police have the power to ruin a man's life. They should take this responsibility a great deal more seriously than they did on April 12, 2006.

### III. With Overwhelming Evidence of No Probable Cause, Why Did A Jury Find for the Defendants?

The jury found for the Defendants by *totally disregarding* the Courts instructions that this case was not about the dog Kato.

The Court: "This is – no part of this case involved any sympathy for the dog. And no part of this case really directly involves the past habits of the dog. Now, what the dog was doing on the date in question, oh, that may have something to do with the case, but of course the police officers weren't there and the focus in what the police officers though they were confronting" [?]

11

The jury listened to incendiary testimony, viewed photographic evidence, and was hearing opening and closing statements which provoked a false feeling of sympathy and rage at the shooting of a dog which was permitted by law.

The testimony of Dale Wigmore, the dog owner, was all about the passive nature of the dog and that the dog was treated as a human being and acted as such.

Counsel: "Where did he sleep?"

Wigmore: "He had his – he actually had a bedroom, his own bedroom and a bed. Inside. Never, never, never slept outside."[6:6-8]

Counsel: "How did he eat?"

Wigmore: "He was extremely – he was a family member. He – if I could explain this. On Thanksgiving he would get, not the scraps, he would get a China Plate just like everyone else at the table, looked like a human plate, with the potatoes, cranberry sauce, that kind of thing. A very well-fed dog." [6:11-17]

Counsel: "And how often was he exposed to strange people in the house?"

Wigmore: "He was exposed because of the day care." (6:12-23)

Counsel: "Now, what was the dog's nature in his interactions with people during his life until the day he was shot by Mr. Grossmith?"

Wigmore: "He was, he was, he was a great dog. Never barked. He was trampled on by day care kids. And remember these kids were, you know, zero to four or five years old. Pulling his tail. He was just a nice dog. I can't say enough about his demeanor, what the neighbors thought of him, what friends, family thought of him. He was an absolute show dog. Gorgeous, well-groomed. If you noticed the bandana he had an orange bandana for Halloween, he had a red bandana for Christmas, and he had a pink bandana for Easter. He got a Christmas stocking. He got an Easter basket. I just can't tell you how he was loved and how he looked and ..." [10-10-23]

The testimony as to the character and temperament of the dog and the dog's picture are at best collateral issues not probative of the issues in the case: as to whether or not the Plaintiff was falsely arrested, prosecuted and suffered a violation of his civil rights and common law assault and battery. In some instances, extrinsic evidence used to disprove a fact previously testified to by a witness may be admissible "if the trial judge deems that it satisfies the Rule 403 balancing test and is not excluded by another rule." Federal Rule of Evidence 403 provides for exclusion of relevant evidence to reduce the risks of unfair prejudice, confusion to the jury and consideration of undue delay and waste of time.

The testimony of Mr. Wigmore and the dogs photograph introduced unfair prejudice, confusion to the jury and a waste of time which, however, turned the minds of the jurors away from the clear instructions of the Court. "It is well established that a party may not present extrinsic evidence to impeach a witness by contradiction on a collateral matter." United States v. Beauchamp, 986 F.2d 1, 3 (1st Cir. 1993). Further, any extrinsic evidence used to disprove a fact testified by a witness must also satisfy the admissibility requirements of Federal Rules of Evidence 403. See United States v. Marino, 277 F. 3d 11, 24 (1st Cir. 2002) cert. denied 536 U.S. 948 (2002).

Collateral issues include matters "...not relevant in the litigation to establish a fact of consequence, i.e. no relevant pupose other than mere contradiction of the in-Court testimony of the witness." Beauchamp, 986 F.2d at 4 citing 1 McCormick on Evidence, §45 at 169 (4th ed. 1992).

In disregard of the Courts ruling in limine this testimony totally tainted the jurors;

minds leading the jury to render a verdict in approximately one (1) hour.

The Plaintiff requests this honorable court to enter judgment in the Plaintiff's favor not withstanding the verdict.

                              Respectfully Submitted:
                              Plaintiff, Frederick Grossmith
                              By His Attorney:

                              /s/ Theodore G. Goguen, Jr., Esq.
                              Theodore H. Goguen, Jr., Esq. BBO# 196740
                              Charles S. Pappas, Esq. BBO# 663281
                              GOGUEN, MCLAUGHLIN, RICHARDS & MAHANEY, LLP
                              2 Pleasant Street
                              S. Natick, MA 01760
Date: May 7, 2009          Tel: (508) 651-1000

# EXHIBIT A

**PART I. ADMINISTRATION OF THE GOVERNMENT**

**TITLE XX. PUBLIC SAFETY AND GOOD ORDER**

**CHAPTER 140. LICENSES**

EMPLOYMENT AGENCIES

DOGS

**Chapter 140: Section 156. Killing dogs under certain conditions; wounded dogs**

Section 156. Any person may kill a dog which suddenly assaults him while he is peaceably standing, walking or riding outside the enclosure of its owner or keeper; and any person may kill a dog found out of the enclosure of its owner or keeper and not under his immediate care in the act of worrying, wounding or killing persons, live stock or fowls, and if any person shall kill or attempt to kill a dog so found, and in the act of worrying, wounding or killing persons, live stock or fowls, he shall not be held liable for cruelty to the dog unless it shall be shown that he intended to be cruel to the dog, or that he acted with a wanton and reckless disregard for the suffering of the dog. Prompt killing of a wounded dog, or a prompt report to the owner or to a dog officer of the wounding of the dog, shall be considered evidence of sufficient regard for the suffering of the dog.