UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.: 07-CV-12324 WGY

| | |
|---|---|
| FREDERICK GROSSMITH,<br>        Plaintiff | )<br>)<br>) |
| VS | )<br>) |
| RICHARD NOONAN and<br>JOSEPH MCDONALD,<br>        Defendants | )<br>)<br>) |

**Defendants' Opposition to Plaintiff's Motion for Judgment
Notwithstanding the Verdict Pursuant to Fed.R.Civ. P. 50(b)**

The defendants oppose the motion of the plaintiff, Frederick Grossmith, for judgment notwithstanding the verdict pursuant to Fed. R. Civ. P. 50(b). As grounds, the defendants state as follows:

Under the Federal Rules, a judgment notwithstanding the verdict is a renewal of a motion for a directed verdict. See Fed.R.Civ.P. 50(b). As such, a motion under Rule 50(b) for judgment notwithstanding the verdict cannot be made unless a motion for directed verdict was properly brought before the court. Javelin Investment v. Municipality of Ponce, 645 F.2d 92, 94 (1st Cir. 1981). Moreover, a party may not raise a ground for judgment notwithstanding the verdict that was not presented to the trial court in a motion for directed verdict. See Systemized of New England, Inc. v. SCM, Inc., 732 F.2d 1030, 1035 (1st Cir. 1984).

The plaintiff did not file a motion for directed verdict at the trial in this matter. He thus cannot file a motion under Fed.R.Civ. P. 50(b) and certainly cannot raises grounds therein that were not previously presented to the court.

1

Contrast Kavanaugh v. Greenlee Tool Co., 944 F.2d 7, 12 (1st Cir. 1991) (plaintiff filed motion for directed verdict at trial and for judgment n.o.v. within ten days after entry of judgment). On this basis alone, the plaintiff's motion should be denied.

Additionally, under Rule 50, the plaintiff was required to file any 50(b) motion within ten days after entry of judgment. This ten-day limit is mandatory and the district court lacks discretion to enlarge it. See Vargas v. Gonzalez, 975 F.2d 916, 917 (1st Cir. 1992) (per curiam); Davignon v. Clemmey, 322 F.3d 1, 10 (1st Cir. 2003). Here, the plaintiff filed a 50(b) motion within the ten-day period but requested and obtained leave to file a supporting memorandum later. It is not clear that this satisfies the strictures and purposes of Rule 50(b) and its strict time limit requirement. Even if it does, a further point bears note. Not only are Rule 50(b) motions limited to grounds stated in an earlier directed verdict motion, which plaintiff did not file, but they are to state such grounds with sufficient specificity. See Pstragowski v. Metropolitan Life Ins. Co., 553 F.2d 1, 3 (1st Cir. 1977); Wells Real Estate, Inc. v. Greater Lowell Bd. of Realtors, 850 F.2d 803 (1st Cir. 1988). Here, the plaintiff's motion states as its ground "that no legally sufficient evidentiary basis exists for the jury to have found in favor of the Defendant in order to render a verdict for the Defendant." Yet, the plaintiff's later memorandum goes beyond arguing whether there was a "legally sufficient evidentiary basis" for the defense verdict. He argues, for example, that the defense gave a different "presentation of the law" than he wanted, made arguments that "confuse[d] the jury," and misquoted the law and that the jury

disregarded the Court's instructions and improperly considered certain extrinsic evidence. He thus interjects error arguments and not just sufficiency of the evidence arguments. Certainly, then, to the extent that the plaintiff's memorandum contains arguments that go beyond the ground stated in his Rule 50(b) motion, such other arguments must be rejected on this additional or alternative basis.

Even putting aside the above deficiencies for the sake of argument, it remains that the plaintiff's Rule 50(b) motion would in any event fail. The standard used to evaluate a motion for a directed verdict or a judgment n.o.v. poses a heavy burden on the moving party. This is especially true when, as in this case, the moving party bears the burden of persuasion. See Insurance Co. of North America v. Musa, 785 F.2d 370, 372 (1st Cir. 1986). _In that circumstance, the standard is more exacting. Marrero v. Goya of P.R., Inc., 304 F.3d 7, 22 (1st Cir. 2002). To succeed under these circumstances, the moving party must establish its case by "testimony that the jury is not at liberty to disbelieve," Jordan v. U.S. Lines, Inc., 738 F.2d 48, 49 (1st Cir.1984), and evidence that is " 'uncontradicted and unimpeached.' " Serv. Auto Supply Co. of P.R. v. Harte & Co., 533 F.2d 23, 25 (1st Cir.1976). Even where the proponent's evidence is uncontradicted, a directed verdict would not be proper if the evidence gives rise to conflicting inferences, see, e. g., Readnour v. Commercial Standard Ins. Co., 253 F.2d 907 (10th Cir. 1958), or where the case is totally dependent on the credibility of a witness. See, e. g., Powers v. Continental Cas. Co., 301 F.2d 386 (8th Cir. 1962). These obstacles are rarely overcome and are not overcome here.

The plaintiff relates his version of his actions "with regard to the law" and argues that such evidence supports his claims against the defendants for "excessive force, false arrest, malicious prosecution, and assault and battery."[1] Plaintiff's Memorandum, p. 1.  However, he omits mention of the fact that he had offered differing accounts about his actions on the day in question.   He also questions the defendants' testimony regarding their investigation of the shooting of the dog.  See Plaintiff's Memorandum, pp. 2-4.  However, undeniably, "it is for jurors, not judges, to weigh the evidence and determine the credibility of witnesses." Musa, 785 F.2d at 372.  Such was the role of the jury here and it fulfilled it.

Moreover, the plaintiff's motion is aimed at arguing that he did not commit any crime for which he was charged, which included a cruelty to animals, killing an animal, and discharge of a firearm near a roadway.  He makes no real argument directed to the claims for assault and battery, intentional infliction and false imprisonment against Officer Noonan or as to the claim of excessive force against Officer McDonald.  The jury found in favor of the defendants on this claims, and such determination should be upheld.  In terms of plaintiff's arguments as to his arrest, it bears noting that neither of the defendants was the arresting officer and, indeed, defendant McDonald had simply been involved in a transport of the plaintiff.  In any event, proof of whether a police officer had probable cause to arrest is not to be confused with the more onerous standard of proof of guilt of the charge.  See United States v.

---

[1] The plaintiff makes no mention of a claim for intentional infliction of emotional distress.

4

Winchenbach, 197 F.3d 548, 555-56 (1st Cir. 1999).  Rather, probable cause exists when an officer, acting upon apparently trustworthy information, reasonably can conclude that a crime has been or is about to be committed and that the suspect is implicated in its commission.  See United States v. Brown, 500 F.3d 48, 56 (1st Cir. 2007).  The plaintiff overlooks this point.

Here, police officers received information that the plaintiff had shot and killed a dog.[2]  The statute on cruelty to animals provides that whoever mutilates or kills an animal, *inter alia*, "shall be punished" by imprisonment or by a fine or by both.  M.G.L. c. 272, § 77.  Meanwhile, M.G.L. c. 266, § 112, states that "[w]hoever willfully and maliciously kills . . . any. . . animal of another person . . . shall be punished by imprisonment . . . or by a fine . . . or by both . . . ."  The jury thus could reasonably and did properly conclude that probable cause existed to arrest the plaintiff on these two charges.  The jury also could reasonably conclude that probable cause existed for the discharge of a firearm near a roadway charge.[3]

The plaintiff argues that his conduct conformed to M.G.L. c. 140, § 156 and that this somehow militates in his favor.  Again, his assertions about his conduct ignore testimony at trial.  For example, he claims he was "peaceably" going about his business when the dog bit him.  In fact, by plaintiff's own testimony, he was reaching at the dog's neck for its tags.  The dog thus did not "suddenly assault" him as he was "peaceably standing."

---

[2]   Contrary to plaintiff's assertion at page 8, it was not "outrageous" or "confusing" or "inaccurate" for defense counsel to relate what the police officer knew at the time of the arrest.

[3]   The crimes of cruelty to animals and discharge of a firearm near a roadway are both felonies.

The plaintiff also misstates the law. For example, the plaintiff makes a confusing argument that it was not necessary that the dog be "in the act of" of attacking persons or livestock. The statute, however, uses that phrase. Moreover, the statute codified common law. The common law mandated, for over four hundred years, that any danger said to justify the killing of a dog in defense of person or property must be both imminent and the result of real or apparent necessity. See generally Jamson v. Brown, 1 Camp. 42, 42, 170 Eng. Rep. 869, 869 (1807); Wright v. Ramscott, 1 Wm. Saund. 84, 85-86, 85 Eng. Rep. 93, 94-95 (1679). See, e.g., McBride v. Orr, 466 A. 2d 952, 953 (N.H. 1983)(strict interpretation of statute allowing dogs to be killed "ensures that the statute is utilized solely to prevent impending harm to animals and not in retribution to dispatch summarily the offending animal after the fact."). Certainly, on the facts known to the police officers, there existed probable cause to arrest him for cruelty to animals, killing an animal, and discharge of a firearm near a roadway.

Thus, whether the killing of the dog fell within the parameters of G.L. c. 140, § 156 did not preclude the plaintiff from being arrested for cruelty to animals. Section 156 states that a person whose conduct fits within the statute "shall not be held liable for cruelty to the dog" he killed "unless it shall be shown that he intended to be cruel to the dog or that he acted with a wanton and reckless disregard for the suffering of the dog." It does not say that such person "shall not be charged with cruelty to the dog" and, indeed, its language clearly contemplates that a cruelty charge may be lodged in the event of a killing of a dog.

Moreover, the plaintiff's argument that there is "not a scintilla of evidence" that he intended to be cruel to the dog or that acted with a wanton or reckless disregard for the suffering of the dog is simply wrong. There was such evidence. Also, contrary to plaintiff's assertions, the statute does not say that the prompt killing of a dog or prompt report of such a killing is evidence of due regard for the suffering of the dog. It says that "[p]rompt killing *of a wounded dog*" or prompt report "*of the wounding* of the dog" shall be considered as such evidence. M.G.L. c. 140, § 156. This was not the scenario here. This was not an instance of the plaintiff killing a wounded dog. This was an instance of the plaintiff going to his truck, loading his gun, aiming it at the dog's head and shooting it because it bit him as he reached for its tags. Certainly, the police officers had probable cause to believe that the plaintiff shooting of the constituted the killing of an animal and warranted arrest for cruelty to animals. They were not required to obtain a quantum of proof necessary to convict before charging him, as plaintiff suggests. See United States v. Uricoechea-Casallas, 946 F.2d 162, 165 (1st Cir. 1991).

The plaintiff also argues that the jury disregarded the Court's instructions. There is no support for this argument and, indeed, it runs counter to the invariable assumption that jurors follow their instructions. See Richardson v. Marsh, 481 U.S. 200, 206, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) (recognizing "the almost invariable assumption ... that jurors follow their instructions"); Evans v. Avery, 100 F.3d 1033, 1041 (1st Cir. 1996) (similar).

## Conclusion

In light of the foregoing, the defendants respectfully request that this Court **deny** the plaintiff's motion for judgment notwithstanding the verdict.

          Respectfully submitted,
          Defendant, Richard Noonan
          and Joseph McDonald
          By their attorneys,

          */s/ Leonard H. Kesten*
          Leonard Kesten, BBO #542042
          Thomas Donohue, BBO #643483
          Deidre Brennan Regan, BBO #552432
          Brody, Hardoon, Perkins & Kesten, LLP
          One Exeter Plaza, 12th Floor
          Boston, MA  02116
          (617) 880-7100

Date: May 20, 2009

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies will be sent this day to those participants indicated as non-registered participants.

          */s/ Leonard H. Kesten*
          Leonard H. Kesten, BBO No. 542042